UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

CAROLYN R. MATTHEWS,           )
                               )
                               )
              Plaintiff,       )
                               )
v.                             )     No. 1:07-CV-46
                               )     *Lee*
TENNESSEE BOARD OF PROBATION   )
AND PAROLE,                    )
                               )
              Defendant.       )

## MEMORANDUM AND ORDER

### I.      Introduction

Before the Court is the motion of Defendant, the Tennessee Board of Probation and Parole

("Defendant" or "BPP"), for summary judgment pursuant to Fed. R. Civ. P. 56 on the claims of

Plaintiff Carolyn R. Matthews of racial and gender (sexual) discrimination under Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* [Doc. 15]. Defendant's motion for a

summary judgment is now ripe for review. For the reasons set forth herein, Defendant's motion for

summary judgment [Doc. 15] will be **GRANTED** and this action will be **DISMISSED WITH**

**PREJUDICE**.

### II.      Background

#### A.       Procedural History

Plaintiff filed her complaint on February 28, 2007, asserting claims of racial and sexual

discrimination under Title VII [Doc. 1]. The matter was originally set for trial on April 22, 2008, after

a scheduling conference with counsel for the parties on June 20, 2007 [Doc. 8]. On February 1, 2008,

the parties filed a joint motion to modify the Court's scheduling order and continue the jury trial [Doc.

10].  At a hearing and scheduling conference concerning the parties' joint motion on February 29, 2008, the parties agreed to a new scheduling order, which was entered on March 6, 2008 [Doc. 14].

Pursuant to the Court's amended scheduling order, Defendant timely filed its motion for a summary judgment under Fed. R. Civ. P. 56 on May 7, 2008 [Doc. 15].  On May 29, 2008, Plaintiff filed a motion for an extension of time to complete discovery [Doc. 23] and a motion for an extension of time to file a response to Defendant's motion for summary judgment [Doc. 24].[1]  Although both motions were denied, in the interests of justice the Court permitted Plaintiff until June 9, 2008 to respond to Defendant's motion for summary judgment [*id.* at 6-7].  On June 15, 2008, Plaintiff filed a motion to voluntarily dismiss this action without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) [Doc. 27], which was denied by the Court on June 26, 2008 [Doc. 34].  Thereafter, on July 1, 2008, Plaintiff filed an untimely response to Defendant's summary judgment motion, in which she concedes Defendant is entitled to summary judgment [*id.* at 5].

### B.      Plaintiff's Complaint

In her complaint, Plaintiff alleged she is a member of two protected classes under Title VII; namely, she is African-American and female [Doc. 1 at 2, ¶ 6].  Plaintiff alleged that from 1992 to 2000, she worked for Defendant, which was then known as the Tennessee Department of Correction – Division of Probation [*id.* at 2, ¶ 9].  She alleged that from 1999 through 2000, Patterson, an

---

[1]  In her motion to extend discovery, Plaintiff essentially sought an extension of the March 21, 2008 discovery deadline to take the deposition of John Patterson ("Patterson").  The Court denied Plaintiff's motion for an extension of the discovery deadline concluding Plaintiff had not shown her failure to timely take Patterson's deposition was the result of excusable neglect under Rule 6(b)(2) [Doc. 26 at 2-3].  The Court also denied Plaintiff's motion for an enlargement of time to respond to Defendant's motion for summary judgment finding Plaintiff had not satisfied the requirements of Rule 56(f) by filing the necessary affidavit establishing the need for the additional discovery she sought – Patterson's deposition – to respond to Defendant's summary judgment motion [*id.* at 5-6].

African-American male, worked for six months as a Probation Manger I under her direct supervision [*id.* at 2, ¶ 10]. Plaintiff also alleges that from 2000 through 2003, she was a District Director (Probation Manager II) under the "reorganized and . . . consolidated" BPP [*id.* at ¶ 11]. Plaintiff asserts in the District Director position she was responsible for state defendants in an 18 county area or unit. [*id.* at 3, ¶ 11].

Plaintiff asserts that as the result of the reorganization and consolidation of the BPP, Patterson became her supervisor and she was demoted or "rolled back" to probation manager I [*id.* at ¶ 12]. Plaintiff alleges this resulted in a loss of status for her [*id.*].

Plaintiff alleges that on December 19, 2003, Patterson sent a memorandum to her and a co-worker, Veronica Hurd ("Hurd"), an African-American female, which directed, in pertinent part, Plaintiff and Hurd to spend two days working in the field and the remaining three days of the work-week in the Chattanooga office of the BPP [*id.* at ¶¶ 13, 14]. Plaintiff asserts the memorandum was directed only to Hurd and herself [*id.*].

Plaintiff also alleges that Patterson also reorganized her unit, leaving her with two caseworkers/probation officer vacancies and allowed two caseworkers to take leave – one for medical reasons and one for bereavement – at the time he reorganized her unit. [*id.* at ¶¶ 15, 16]. Plaintiff asserts Patterson's actions left her with one caseworker and a caseload of 200 active cases to process [*id.* at 4, ¶ 17]. Plaintiff asserts that Patterson did not make allowances for the changes he created in her unit as the result of his reorganization and on February 2, 2004, she requested, in a memorandum, Patterson to delay the implementation of his reorganization of her unit [*id.* at ¶ 21]. Plaintiff asserts that on February 9, 2004, she filed a formal grievance with the Defendant [*id.* at ¶ 23]. She also asserts that on March 23, 2004, Sammy Howard, Frank Mabery and James Alsip, who were white managers under Patterson's supervision, informed her they never received a memorandum from

Patterson, requiring them to be in the field two days per week [*id.* at 5, ¶ 25]. Plaintiff further asserts that on March 24, 2004, James Wallace, a white male manager under Patterson's supervision, informed her he never received a memorandum requiring him to be in the field two days per week [*id.* at ¶ 26].

Plaintiff asserts Defendant, as a direct and proximate result of the actions and omissions of its agent Patterson: (1) subjected her to an hostile work environment and (2) discriminated against her based upon her race and gender [*id.* at ¶ 28].

### C. Facts

#### 1. William D. Evans' Affidavit

The affidavit of William D. Evans ("Evans"), dated May 6, 2008, appears in the record [Doc. 18]. Evans' employment with the BPP began on August 16, 2004 [*id.* at 1, ¶ 2]. Evans currently holds the position of Human Resource Director 2, which he has held since August 16, 2004 [*id.*]. Evans' affidavit describes the BPP as "a statewide agency composed of field services officers geographically located to enable the supervision of probationers and parolees." [*Id.*]. Evans' affidavit further states in pertinent part:

> 3. On March 14, 2003, a letter was sent to [Plaintiff] informing her employment status would change from a Probation/Parole Manager 2 ("PPM2") to a Probation/Parole Manager 1 ("PPM1"). This change was due to a statewide reduction-in force. [Plaintiff] did not suffer any change in pay, benefits or leave as a result of the move.
>
> 4. Other PPM2s across the state were likewise moved to PPM1 positions due to the reduction-in-force. Floyd Hall, a black male, and James Beard, a white male, were moved. The selection of who would be moved from a PPM2 to a PPM1 was based on the amount of total state service hours. Those with the higher amount of total state service hours were

given preference pursuant to Tennessee state statute, Tenn. Code Ann. 8-30-320(2) . . . .

5.     [BPP] employee John Patterson had more total state service hours than [Plaintiff]. As a result of the reduction-in-force, John Patterson became Ms. Matthews' immediate supervisor.

6.     In the autumn of 2003, Assistant State Director Odie Jones directed that supervisors spend more time in the field monitoring officers.

7.     [Plaintiff] filed a grievance regarding the two day requirement and was afforded a Level IV grievance hearing. The Appointing Authority determined that John Patterson's request represented a legitimate business decision made in the course of his employment as District Director.

8.     As of August 26, 2004, [Plaintiff] supervised six Probation/Parole Officers ("PPO") with a total caseload of 561 offenders. . .[Plaintiff's] caseload was not inconsistent with the caseload of other PPM1s throughout the State of Tennessee.

[*id.* at 1-2].

## 2.     John Patterson's Affidavit

The affidavit of John Patterson ("Patterson"), dated May 6, 2006, appears in the record [Doc. 19]. Patterson's employment with the State of Tennessee began in 1973 [*id.* at 1, ¶ 2]. Patterson is currently a PPM2 with the BPP, and has held such a position since July 1999 [*id.*]. From June 2003 to November 2006, Patterson was District Director and Plaintiff's immediate supervisor [*id.*]. Plaintiff was a PPM1, and in such position had direct supervision of parole officers [*id.*].

Patterson's affidavit further states in pertinent part that:

4.     On December 19, 2003, I prepared and sent a memorandum to [Plaintiff] and Veronica Hurd requesting that they be in their field offices/work areas at least two days a week.

> 5.     Accompanying officers under her supervision on home visits to parolees and in the field fell within the job responsibilities of [Plaintiff] as a PPM1.
>
> 6.     The reason the December 19, 2003 memorandum was set to [Plaintiff] and Ms. Hurd and not to other PPM1s within my district was because [Plaintiff] and Ms. Hurd were the two supervisors with the most officers working in the outlying rural counties. In addition, it was my opinion as the immediate supervisor of [Plaintiff] and Ms. Hurd that they were not spending enough time in the field supervising their officers. Other PPM1s within my district were already spending more time in the field than [Plaintiff] or Ms. Hurd.
>
> 7.     The reorganization of [Plaintiff's] unit was necessary due to vacancies and absences. Throughout the time of the reorganization, the caseload of [Plaintiff's] unit was consistent with the caseload of other units throughout the State of Tennessee.
>
> 8.     I allowed other employees to assist [Plaintiff] with her unit's caseload and responsibilities.
>
> 9.     My actions and instructions regarding the December 19, 2003 memorandum and the reorganization of [Plaintiff's] unit were legitimate business decisions and were not based on the sex or race of either [Plaintiff] or Ms. Hurd.

[*id.* at 2].

### 3.     The December 19, 2003 Memorandum

A copy of the December 19, 2003 memorandum from Patterson to Plaintiff and Hurd concerning work schedules at the BPP is attached to Patterson's affidavit [Doc. 19-2]. The memorandum states in pertinent part :

> In order to be of assistance to the employees you supervise, you need to adhere to the following schedule. Each week your schedule should reflect you being in the field officers/work areas at least two

days a week. We need to provide more hands on supervision to the officers and be available to them when needed . . .

As supervisors we need to assist the officers when needed and also comply with the direction of the memo from Assistant State Director, Odie Jones which states that supervisors at different intervals need to spend more time in the field monitoring officers and go with them on home visits, etc at different intervals.

Effective January 2004, you need to be in the field areas you supervise two days per week and in the Chattanooga office three days per week. I know this can change with unusual circumstances or emergencies. Try to schedule your days in the Chattanooga office to coincide with the days your officers are in the Chattanooga office. . . .

[*Id.*].

### 4.        Plaintiff's Deposition

Portions of Plaintiff's deposition, taken on March 13, 2008, are attached to Defendant's motion [Doc. 20-2]. Plaintiff testified her current position with the State of Tennessee/BPP is PPM1, probation parole manager 1, which she has held since about July of 2003 [*id.* at 3]. Plaintiff testified that in her position she supervises officers, conducts performance evaluations and file checks; and, also does work on the computer involving fees, such as checking cases and answering questions [*id.*]. Plaintiff testified the job duties of a PPM1 are different than the duties of a PPM2 [*id.* at 3-4]. Plaintiff testified that as a PPM1, she deals with the officers who deal with individuals who are on probation and parole and also individuals who are on probation and parole and who are transferring from other parts of the state or other parts of the country [*id.* at 4].

Plaintiff testified the basis of her complaint against Defendant was that in July of 2003 she was demoted from a PPM2 to a PPM1 – which was called a reduction in force [*id.* at 7]. She also stated that in August of 2003, she was given a task while she was out on sick leave involving a 100% file review of another black female employee [*id.*].

-7-

With regard to the fact that Patterson became her supervisor, Plaintiff acknowledged that Patterson may have had more years of service than she did [*id.* at 8]. She stated, however, it was her understanding that she had more time and class – and perhaps better performance reviews – than Patterson [*id.* at 9]. Plaintiff acknowledged, however, that she was not saying the BPP violated a state statute or personnel directives when it only considered years of service as opposed to time and class/performance at the time of the reduction in force because she believed the state can consider both or either of those factors [*id.* at 9].

Plaintiff also testified that in December 2003, she and the only other black female in the district received a memorandum from Patterson requiring her to be in the field two days every work week [*id.* at 10]. Hurd was the other BPP employee who received the memorandum from Patterson [*id.* at 13].

Plaintiff stated the BPP had offices in some counties [*id.* at 11]. Plaintiff stated that in December 2003, she worked at the BPP district office in Chattanooga (Hamilton County) [*id.*]. She stated she was then supervising approximately seven officers, none of whom worked in Hamilton County [*id.* at 13]. Plaintiff also acknowledged that prior to the time she and Hurd received Patterson's memorandum, there had been a general statement from the Central Office about managers being in the field more [*id.* at 14]. Plaintiff stated that in December of 2003, Patterson was overseeing eight or nine managers, some of whom were in outlying counties [*id.* at 15]. Plaintiff stated Patterson's memorandum did not specify which two days of the week she was to be in the field, he gave her the leeway to decide which two days she was to be in the field [*id.* at 17]. Plaintiff stated that rather than going out two days a week every week, she would have preferred going out in the field as she felt the work dictated and was necessary [*id.* at 18]. Plaintiff stated she felt that Patterson's actions in not allowing her to set her schedule was due to race and sex [*id.* at 18]. Plaintiff

could not, however, recall any specific statements Patterson made to her or in her presence regarding race and sex [*id.*].

Plaintiff testified in 2003 and 2004 she had approximately 200 active cases [*id.* at 19]. Plaintiff stated that after the reorganization or reduction in force of the BPP, there were various times from 2003 onward, that she would ask to flex her schedule or to work over to get a specific task done and Patterson denied her request [*id.* at 22]. Plaintiff stated that:

> by requiring two days in the field . . . you have to do paperwork, other deadlines that have to be met had to be met by me with the three days I could be in the office rather than being able to manage my time. Time, at that time, in the field for me was basically downtime.

[*id.* at 22]. Plaintiff testified it was her belief she was not paid overtime if she worked over, she could only get "comp" time [*id.* at 24]. Plaintiff stated Patterson told her he would not allow her to flex her schedule or have "comp" time in the situations she requested because it was not an emergency [*id.* at 25]. Plaintiff stated that others were working over [*id.* at 25].

Plaintiff recalled an incident where she walked into a staff meeting where people were sitting down and asked for a chair [*id.* at 26]. She stated that Patterson said "Oh, you walk in late and now you want a special chair?" [*Id.*]. Plaintiff stated that during that same meeting he asked for comments on a topic and when Plaintiff made a comment, Patterson told her to "shut up" or words to that effect [*id.*]. Plaintiff stated she thought Patterson's comments during the staff meeting were rude, but when asked whether the comments about needing a special chair or to shut up were directed at her because of her race or sex, Plaintiff replied "possibly" (*id.* at 26-27). Plaintiff also stated she had heard Patterson use profanity with other employees in conversation, but she did not believe he ever did so in a more formal setting such as a meeting (*id.* at 27). Plaintiff stated there may have been other

actions of Patterson and the BPP that she felt were either discriminatory or led to a hostile work environment, but she could not recall any specifics [*id.* at 28].

Plaintiff also testified there was no change in her actual take home pay at the time of the reduction in force when she was "demoted" from PPM2 to PPM1 [*id.* at 29]. She stated that her pay range changed because as a PPM2 she had the potential to make more money than as a PPM1 [*id.* at 29]. Plaintiff stated she had not applied for any promotions and there had been no changes in the amount of sick leave or vacation days as the result of her "demotion" from PPM2 to PPM1 [*id.* at 30].

### 5. Plaintiff's Charge

Plaintiff's complaint/charge of discrimination is attached to Defendant's complaint [Doc. 20-3]. The charge is dated July 4, 2004, and is stamped received by the Equal Employment Opportunity Commission in Nashville, Tennessee, on July 13, 2004 [*id.*].

### 6. Plaintiff's Response to Defendant's Interrogatories

Plaintiff's response to the BPP's interrogatories are attached to Defendant's motion for summary judgment [Doc. 20-3]. The BPP's Interrogatory No. 7 asked Plaintiff to identify actions taken by the BPP and/or its agents which she asserted constituted race and/or sex discrimination under Title VII [*id.* at 3]. Plaintiff's response was:

> Event Two:        August 6, 2003 Work Assignment/Denial of Comp
>                   Time
>
> Abstract Summary:    Less than two months after demotion
>                      plaintiff was required to perform a
>                      complete manual file audit on
>                      another black female's case load
>                      despite the facts that complete
>                      (100%) file audits were done
>                      electronically. The female scored
>                      over 90% on the electronic audit, no
>                      previous training for this type of
>                      audit was give [sic] to plaintiff prior

to assignment, assignment given while plaintiff was on sick leave, request for written procedure to complete audit never received, request that other mandatory requirements be moved or be reassigned denied, request for comp time to complete assignment denied.

. . .

Event Three:  December 19, 2003 Work Schedules/Disparate Treatment Based on Race and Sex

Abstract Summary:  On the above captioned date John Patterson . . . issued a memorandum to plaintiff and Veronica Hurd, both African American females, directing them [to] include two days a week in their work schedule for field duty.

The following similar situated persons, who were also under Mr. Patterson's supervision did not receive a memorandum to work in the field two days a week: Frank Mabery (Caucasian male), Sammy Howard (Caucasian male), James Alsip (Caucasian male), James Wallace (Caucasian male), Gale Reed (Caucasian female), Larry Turner (Caucasian male) and Jim Crumble (African American male).

. . .

Event Four:  County Redistriction: Request to Delay Implementation Denied

Abstract Summary:  John Patterson . . . ordered a reorganization of personnel under the supervision of plaintiff and Veronica Hurd. Prior to the reorganization, plaintiff had two vacant positions. The reorganization transferred two workers from Veronica Hurd to plaintiff. One of these employees was anticipated to go and leave for surgery. The other

-11-

employee was anticipated to go on bereavement leave, with the anticipated passing of his ill spouse. The two employees to be transferred from the plaintiff to Veronica Hurd had no uncertainty. Plaintiff would face becoming familiar with the client population of transferred employees that were expected to be unavailable for duty.

Plaintiff's memo to Mr. Patterson specifically requested a delay in the reorganization until the four positions were stabilized. At the time, the reorganization would leave plaintiff with two vacant positions and the potential to have four vacant positions. . . . Mr. Patterson refuse to delay the reorganization until the staff situation was stabilized.

[*Id.* at 3-6].

## III.    Analysis

Defendant seeks a summary judgment on Plaintiff's claims [Doc. 16 at 1-2]. Specifically, Defendant asserts: (1) Plaintiff's allegations concerning her demotion/the reduction in force are beyond the 300-day limitations period for filing timely charges with the EEOC and are barred by the relevant statute of limitations [*id.* at 4-5]; (2) Plaintiff cannot establish a prima facie case of discrimination under Title VII for the "roll back" of her position due to the statewide reduction in force [*id.* at 6-7]; (3) Plaintiff cannot establish a prima facie case of discrimination regarding any of her remaining allegations [*id.* at 7-8]; (4) Plaintiff cannot establish she suffered any adverse employment actions with regard to her remaining claims of discrimination and retaliation under Title VII [*id.* at 8-9]; (5) Even if Plaintiff were able to establish a prima facie case of discrimination under

Title VII, she cannot show Defendant's articulated reasons for its actions were a pretext [*id.* at 9-12]; (6) Plaintiff cannot establish a hostile work environment [*id.* at 12-15].

In her untimely response to Defendant's motion for a summary judgment, Plaintiff "concedes her claims are time barred as having missed the 300 day statute of limitation to bring her EEOC claim, a prerequisite to this litigation." [Doc. 35 at 5]. Thus, Plaintiff acknowledges that Defendant is entitled to a summary judgment on her Title VII claims [*id.*]. Plaintiff further concedes "that her suit, which arose from her EEOC claim, must be dismissed with prejudice." [*id.*].

## A.     Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *National Satellite Sports*, 253 F.3d at 907.

Although Plaintiff's submitted evidence along with her untimely response to Defendant's motion for summary judgment, she did not discuss this evidence in her response and does not argue the Court should review and consider such evidence in connection with her response. However, there is no such thing as a summary judgment by default. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 -10 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (emphasis in original)). Thus, with regard to the pending dispositive motion, this Court has not relied solely upon any waiver by Plaintiff as the result of her untimely filing of a response to Defendant's motion. Moreover, the Court has not relied solely on Plaintiff's concessions in her response to Defendant's motion. Rather, the Court has reviewed the evidence submitted by Defendant in connection with its motion to determine if the Defendant is entitled to a summary judgment.

### B.      Statute of Limitations Issues

Defendant asserts that as Plaintiff's EEOC charge was not filed until July 13, 2004, Plaintiff's claims regarding her demotion from a PPM2 to PPM1 should be dismissed for failure to comply with the 300-day statutory limitations period in which to timely file an EEOC charge [Doc. 16. at 4-5]. As conceded by Plaintiff, her Title VII discrimination claim concerning: her "demotion" from PPM2 to PPM1 and is barred as untimely.[2] *Tartt v. City of Clarksville*, 149 F. App'x 456, 460 (6th Cir. Sept. 13, 2005). Tennessee is a "deferral state" for purposes of federal discrimination statutes, including Title VII. *Id.* (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th

---

[2]   In her response to Defendant's interrogatories, but not as an allegation in her complaint, Plaintiff also identified the August 6, 2003 assignment to perform a manual file audit on the work load of another BPP employee and the subsequent denial of "comp" time for the task as an action of discrimination/retaliation. Even if Plaintiff had raised this as an allegation in her complaint any claim of discrimination/retaliation for this incident would be barred as untimely as it occurred prior to September 17, 2003. *Tartt*, 149 F. App'x at 460.

Cir. 2002); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992)). "In a deferral state . . . a plaintiff . . . must file h[er] EEOC charge within 300 days of the alleged discrimination." *Id.* (citing 42 U.S.C. § 2000e-5(e)(1); *Weigel*, 302 F.3d at 375-76). Although "the 300-day bar is not jurisdictional, it does have the effect of a statute of limitations . . . ." *Id.*

As acknowledged by Plaintiff in her response to Defendant's summary judgment motion, she filed her complaint with the EEOC on July 13, 2004 [Doc. 20-3 at 1; 35 at 4]. Plaintiff received the letter informing her of the change in employment status from PPM2 to PPM1 on March 14, 2003 [Doc. 18 at ¶ 3]. Plaintiff testified she has been a PPM1 at the BPP since July 2003 [Doc. 20-2 at 3]. Thus, the 300-day bar prevents Plaintiff from claiming discrimination for events which occurred prior to September 17, 2003, which is 300 days from the date of her July 13, 2004 filing. This encompasses both the May 14, 2003 notice of her "demotion" from PPM2 to PPM1 as the result of the statewide reduction in force and the July 2003 effective date of her "demotion" from PPM2 to PPM1. Likewise, this would also encompasses the August 6, 2003 work assignment/denial of "comp" time; namely, performing a complete manual file audit on the work load of another BPP employee and the denial of "comp" time to complete the assignment, which is identified by Plaintiff as event two in her response to Defendant's interrogatories [Doc. 20-3 at 5].[3]

Accordingly, the Court concludes Plaintiff's claims of discrimination concerning: (1) her "demotion" from PPM2 to PPM1 and (2) the August 6, 2003 assignment to perform a manual file audit on the work load of another BPP employee and the subsequent denial of "comp" time for the

---

[3] Although Plaintiff identified the August 6, 2003 manual file audit/denial of "comp" time as an alleged incident of discrimination in her response to Defendant's interrogatories, Plaintiff has not asserted a claim of discrimination based upon this even in her complaint.

task are time barred; therefore, that aspect of Defendant's motion which seeks summary judgment on the aforementioned claims of discrimination will be **GRANTED**.

### C.       Discrimination Based on Gender or Race Issues

Defendant asserts Plaintiff cannot establish a *prima facie* case of discrimination regarding the December 19, 2003 memorandum which was sent to Plaintiff and Hurd by Patterson because she was not similarly situated to other PPM1s in the Chattanooga district office [*id.* at 7-8]. Defendant further asserts Plaintiff cannot establish the reorganization of her unit was discriminatory or that she suffered any adverse employment action as the result of the reorganization [*id.* at 8-9]. In addition, Defendant asserts that even if Plaintiff established a *prima facie* case of discrimination, Defendant has shown legitimate, non-pretextual reasons for Patterson's December 19, 2003 memorandum and the reorganization of her unit. [*id.* at 9-12].

In her untimely response to Defendant's motion for summary judgment, Plaintiff focuses on two events: (1) her "demotion" from PPM2 to PPM 1 and (2) the December 19, 2003 memorandum from Patterson to Plaintiff and Hurd directing them to spend two days per week in the field [Doc. 35 at 2-3].[4] Plaintiff does mention Patterson's reorganization of her unit in her response to Defendant's summary judgment motion.

### 1.       Legal Standard

Title VII makes it:

> an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions

---

[4] In her response to Defendant's motion for summary judgment, Plaintiff also makes a brief reference asserting she asked Patterson for flextime after the December 19, 2003 memorandum, but that Patterson denied her flex time requests unless it was an emergency [Doc. 35 at 3]. Again, no allegation concerning Patterson's denial of Plaintiff's flextime requests appears in Plaintiff's complaint [Doc. 1].

> or privileges of employment, because of such individual's race, color, religion, sex or national origin.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)). "Generally speaking, a plaintiff in a . . . discrimination action 'has the burden of proving by a preponderance of the evidence a *prima facie* case.'" *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). Once the existence of a *prima facie* case is established, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). "If the defendant meets this burden, the plaintiff must then show that the defendant's articulated reason is a pretext for discrimination." *Id.* "Even though the burden of going forward with the evidence may shift between the plaintiff and the defendant, the burden of persuasion always remains with the plaintiff." *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984) (citing *Haynes v. Miller*, 669 F.2d 1125, 1126-27 (6th Cir. 1982)).

A plaintiff can meet her burden of establishing a *prima facie* case by providing direct or circumstantial evidence that raises a genuine issue that her employer discriminated against her or by simply proving that: (1) she was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the job; and (4) for the same or similar conduct she was treated differently from similarly situated employees outside of the protected class. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001); *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). As Plaintiff has asserted both race and/or gender discrimination in this action, to succeed on her claim, her race and/or gender need only be a motivating factor, not the sole factor in order for her to succeed on her claim. *Perry*, 209 F.3d at 601 (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988).

Once an employer has come forward with a non-discriminatory reason for an adverse employment action, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). In order to show that a jury could reasonably reject an employer's explanation for an adverse employment action, *i.e.*, to survive summary judgment, a plaintiff must show "by a preponderance of the evidence" the reasons proffered by the employer "(1) had no basis in fact, (2) did not actually motivate the [employer's action] or (3) was insufficient to motivate the employer's action." *Dews v. A. B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer*, 29 F.3d at 1084). "The plaintiff must allege more than a dispute over the facts upon which his discharge was based. [S]he must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite*, 258 F.3d at 493-94. To determine whether the employer held an "honest belief" in the proffered basis for its adverse employment action, the Sixth Circuit "looks to whether the employer can establish its 'reasonable reliance' on the particularized facts that were before it at the time the decision was made." *Id.* at 494 (citing *Smith*, 155 F.3d at 807). In deciding whether reasonable reliance was present the Sixth Circuit has stated it does:

> not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Smith*, 155 F.3d at 807.

As long as an employer honestly believes in the proffered reason for an adverse employment action, "the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* at 806. If an employer "honestly, albeit mistakenly,

believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer . . . lacks the necessary discriminatory intent." *Id.* "[A]rguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for [an adverse employment] decision are '*right* but whether the employer's description of its reasons is *honest*.'" *Id.* (quoting *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997)) (emphasis in original).

### 2. Application

Direct evidence is evidence that, if it is believed, would require a conclusion unlawful discrimination was at least a motivating factor in the employer's adverse employment action without drawing any inferences. *Thomas v. Union Institute*, 98 F. App'x 462, 464 (6th Cir. 2004). In this instance, Plaintiff has no direct evidence of racial or gender discrimination. Thus, if Plaintiff is to establish a *prima facie* case of racial and/or gender discrimination she must do so by circumstantial evidence using the *McDonnell Douglas/Burdine* burden shifting analysis.

### a. Memorandum to Plaintiff

As noted, with regard to Plaintiff's remaining allegations of Title VII discrimination, Defendant asserts Plaintiff cannot establish a *prima facie* case of discrimination. Specifically, with regard to Plaintiff's claims of discrimination concerning the December 19, 2003 memorandum Patterson sent to Plaintiff, Plaintiff has asserted Defendant/Patterson discriminated against her based on her race and gender when he subjected her to unfair terms and conditions of employment by requiring her to spend two days per week in the field. Plaintiff asserts Patterson did not send the December 19, 2003 memorandum to white male managers of PPM1s under his supervision, including Sammy Howard, Frank Mabery, James Alsip and James Wallace, whom she alleges were similarly situated employees under Patterson's supervision. Patterson's affidavit states that he sent the

December 9, 2003 memorandum to Plaintiff and Hurd, and not to the other PPM1s under his supervision because: (1) Plaintiff and Hurd were the two PPM1s with the most officers working in the outlying rural counties, (2) the other PPM1s within Patterson's district were already spending more time in the field than Plaintiff or Hurd and (3) in his opinion, as the immediate supervisor of Plaintiff and Hurd, neither Plaintiff nor Hurd were spending sufficient time in the field supervising their officers.

"In order for two or more employees to be considered similarly situated for purposes of creating an inference of disparate treatment . . . the plaintiff must prove that all of the relevant aspects of h[er] employment situation are 'nearly identical' to those of the [employee] who he alleged [was] treated more favorably." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (quoting *Pierce v. Commonweath Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). "The similarities between the plaintiff and the [allegedly similarly situated employee] must exist in all relevant aspects of their respective employment circumstances." *Id.* In order to satisfy her burden of showing she was treated differently that similarly situated employees outside of the protected class, a plaintiff must "identify someone who has dealt with the same supervisor, has been subject to the same standards, and has engaged in the same conduct without differentiating or mitigating circumstances which would justify a distinction between either the workers' conduct or the supervisor's treatment of the workers." *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 173 -74 (6th Cir. 2004).

Plaintiff cannot show that other similarly situated employees who were outside of the protected class were treated more favorably than she was, *i.e.*, did not receive the December 19, 2003 memorandum from Patterson directing them to spend two days per week in the field, because Patterson's affidavit states the memorandum was sent to Plaintiff and Hurd – who is a member of the same protected classes as Plaintiff – because they supervised more officers in outlying counties than

the other PPM1s under Patterson's supervision and the other PPM1s under Patterson's supervision were already spending more time in the field than either Plaintiff or Hurd.

Defendant asserts that even if Plaintiff were able to establish a *prima facie* case of discrimination under Title VII based upon her claim concerning the December 19, 2003 memorandum, it has articulated a legitimate, non-discriminatory reason for sending the memorandum to Plaintiff, and Hurd, and there is no evidence the memorandum – and the requirement Plaintiff and Hurd spend two days per week in the field – were a pretext for unlawful discrimination.

Defendant has articulated a legitimate, non-discriminatory reason for Patterson's December 19, 2003 memorandum to Plaintiff, and Hurd. Evans' affidavit notes that in the autumn of 2003, the assistant state director of the BPP, directed supervisors to spend more time in the field monitoring officers. In her deposition, Plaintiff did acknowledge that prior to the time she received Patterson's memorandum, there had been a statement from the BPP's central office that managers should be in the field more. As noted, Patterson's affidavit indicates he sent the memorandum to Plaintiff and Hurd because the other PPM1s in the Chattanooga office were spending more time in the field that either Patterson or Hurd, who supervised more officers in outlying rural counties than the other PPM1s under Patterson's supervision. Patterson also stated in his opinion Plaintiff and Hurd were not spending enough time in the field. In her deposition, Plaintiff characterized her time in the field as downtime and indicated she felt Patterson should have permitted her to go out in the field as she felt it was necessary, and as her work dictated, rather, than being required to go out in the field two days per week, every week. Although Plaintiff was clearly dissatisfied with the directive of her immediate superior, Patterson, Plaintiff has presented no evidence showing the legitimate reason advanced by Defendant/Patterson for the December 19, 2003 memorandum to Plaintiff and Hurd was a pretext for discrimination. In reviewing an alleged Title VII violation, a court should not aim "to

review bad business decisions or question the soundness of am employer's judgment." *Adams v. Tennessee Dept. of Finance and Admin.*, 179 F. App'x. 266, 272 (6th Cir. May 1, 2006) (citing *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 549 (6th Cir. 1991)).  In a Title VII action, a court is not intended to be a "super personnel departments to second guess an employer's facially legitimate business decisions." *Id.* (citing *Bush v. Am. Honda Motor Co.*, 227 F. Supp. 2d 780, 797 (S.D.Ohio 2002) (quoting *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1007 (7th Cir.2002)).

Thus, based upon the uncontroverted evidence, Defendant has satisfied its burden of showing there is no genuine issue of material fact and as a matter of law, Defendant is entitled to a summary judgment on Plaintiff's claim of discrimination based upon the December 19, 2003 memorandum sent from Patterson to Plaintiff and Hurd.

### b.       Reorganization of Plaintiff's Unit

With regard to Plaintiff's claims of discrimination concerning the reorganization of her unit at the BPP, Defendant asserts Plaintiff cannot establish the reorganization constituted an adverse employment action.  Defendant also asserts that even if Plaintiff did establish a *prima facie* case of discrimination with regard to her claim of discrimination based upon the reorganization of her unit, Defendant has advanced a legitimate, non-pretextual reason for its action and Plaintiff has presented no evidence showing the decision was a pretext for unlawful discrimination.

An adverse employment action is a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Kocsis v. Multi-care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996).  Reassignments not involving changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions.  *Id.*  The Sixth Circuit has stated that a materially adverse change in the terms and conditions of employment:

must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by . . . a decrease in wages or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indicia that might be unique to a particular situation.

*Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1657 (2008).[5]

Based upon the uncontradicted evidence before the Court, the reorganization of Plaintiff's unit by Patterson does not fall within the definition of a "materially adverse employment action" as the Sixth Circuit has defined that term in the Title VII discrimination context. Patterson's affidavit states the reorganization of Plaintiff's unit was necessary due to vacancies and absences and that throughout the reorganization, the caseload of Plaintiff's unit remained consistent with the caseload of other units throughout the State of Tennessee. Patterson's affidavit also states he allowed other employees to assist Plaintiff with the caseload and responsibilities. Moreover, Evans' affidavit also states that Plaintiff's caseload was not inconsistent with the caseload of other PPM1's at the BPP throughout Tennessee. Based upon the evidence in the record, the reorganization of Plaintiff's unit did not result in the termination of her employment; a demotion; significantly diminished material

---

[5] The Sixth Circuit has noted that in the decision in *Burlington Northern and Santa Fe Railway Co. v. White*, 547 U.S. 53, 67-68 (2006), the Supreme Court adopted an expanded definition of the term "materially adverse employment action" in the context of a Title VII retaliation claim. *Michael*, 496 F.3d at 593-94. The Sixth Circuit stated, however, that in *Burlington Northern*, the Supreme Court distinguished the text and purpose of the anti-retaliation provision of Title VII from the anti-discrimination provision of Title VII. *Id.* at 594. Thus, the Sixth Circuit stated that although the expanded version of the term "materially adverse employment action" adopted by the Court in *Burlington Northern* applies to a Title VII retaliation claim, the Sixth Circuit's traditional formulation of the term "materially adverse employment action" in a Title VII claim is unaffected by the decision in *Burlington Northern*. *Id. See also Tepper v. Potter*, 505 F.3d. 508, 515 n. 1 (6th Cir. 2007) ("*Burlington Northern* did not expand or alter this Court's formulation of an adverse employment action for purposes of the discrimination claim before us.").

responsibilities; a less distinguished title; a material loss of benefits; or any other indices unique to the situation, including a caseload that was inconsistent with or greater than the caseload of other PPM1s at the BPP throughout Tennessee.

Defendant also asserts that even if Plaintiff were able to establish a *prima facie* case of discrimination under Title VII based upon her claim concerning Patterson's reorganization of her unit, it has articulated a legitimate, non-discriminatory reason for the reorganization and there is no evidence the reorganization was a pretext for unlawful discrimination. Defendant has advanced a legitimate, non-discriminatory reason for the reorganization of Plaintiff's unit. Patterson's affidavit states the reorganization was necessary due to vacancies and absences.

The allegations in Plaintiff's complaint and, particularly, her response to Defendant's interrogatories confirm the vacancies and absences. In her response to Defendant's interrogatories, Plaintiff states that she requested Patterson to delay the reorganization until the situation regarding the absences/vacancies stabilized. Thus, Plaintiff's response to Defendant's interrogatories shows the reorganization was not a pretext. Rather, based upon her interrogatory responses, Plaintiff questioned Patterson's judgment as to the timing of the reorganization, not the necessity for an eventual reorganization.

Thus, based upon the uncontroverted evidence, Defendant has satisfied its burden of showing that there is no genuine issue of material fact and as a matter of law, it is entitled to a summary judgment on Plaintiff's remaining claims of discrimination, including claims based upon Patterson's reorganization of her unit.

### D.      Hostile Work Environment Issues

Defendant asserts Plaintiff cannot establish she suffered a hostile work environment because the conduct she alleged was not so severe and pervasive as to alter the terms and conditions of her employment [Doc. 16 at 12-15].

### 1.      Legal Standard

To prevail on a claim of a hostile work environment, a plaintiff must show: (1) she is a member of a protected class; (2) she was subject to the unwelcomed harassment; (3) the harassment was based upon her disability and protected activity; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the employer failed to take reasonable care to prevent and correct any harassing behavior. *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006); *Downs v. Postmaster General*, 31 F. App'x 848, 850 (6th Cir. Mar. 7, 2002). "The elements and burden of proof [for a claim of a hostile work environment] are the same, regardless of the discrimination context in which the claim arises." *Randolph*, 453 F.3d at 733 (quoting *Crawford v. Medina Gen'l Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996)).

A hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Both objective and subjective tests must be satisfied to establish a hostile working environment: "the conduct must be so severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Harris*, 510 U.S. at 21-22). "[O]ffhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 733 (quoting *Farragher*

*v. City of Boca Raton*, 524 U.S. 775, 788)). A claim of a hostile work environment is "cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's protected status. *Michael*, 496 F.3d at 600. Factors which a court should consider in determining whether conduct creates or constitutes a hostile work environment includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Randolph*, 453 F.3d at 733 (quoting *Harris*, 510 U.S. at 23).

### 2. Application

Plaintiff has alleged that Defendant, through the acts and omissions of its agent, Patterson subjected her to a hostile work environment [Doc. 1 at 5, ¶ 28]. In her complaint, Plaintiff identified the actions of Patterson which are alleged to have contributed to the hostile work environment as: (1) the December 19, 2003 memorandum to Plaintiff and Hurd, directing her to work in the field two days per week; and (2) Patterson's reorganization of her unit. Plaintiff's complaint further states she made inquiries to Patterson about the December 19, 2003 memorandum to Patterson concerning the scope of the memorandum, but that Patterson never responded to her inquiry [Doc. 1 at 4, ¶ 19]. Plaintiff also stated she made inquiries to Patterson on January 26, and 27, 2004 about why he made the requirement she spend two days per week working in the field a mandatory requirement and that Patterson did not respond to her inquiries [*id.* at ¶ 20]. Plaintiff states that on February 2, 2004, she

sent a memorandum to Patterson requesting he delay the reorganization of her unit, but Patterson did not respond to her request [*id.* at ¶¶ 21, 22].[6]

In her response to Defendant's interrogatories, but again not in her complaint, Plaintiff asserts she was assigned to perform a manual file audit on another BPP employee and was denied a request for "comp" time to complete the assignment. Plaintiff also alleges that at the time she was assigned to do the manual file audit, audits were usually done electronically at the BPP [Doc. 20-3 at 4].[7]

Viewing the evidence in the light most favorable to Plaintiff, the acts which form the basis of Plaintiff's claim of a hostile work environment even when considered in their totality do not rise to the level of a hostile work environment because they are isolated incidents and do not show a workplace so permeated with discrimination or discriminatory intimidation; ridicule or insult which was sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment at the BPP.

As noted in the discussion above with regard to Plaintiff's claims of Title VII discrimination, Defendant has advanced legitimate, non-discriminatory reasons for Patterson's December 19, 2003 memorandum and the reorganization of Plaintiff's unit and there is no evidence suggesting such acts

---

[6] In her deposition, but not in her complaint, Plaintiff stated there were times in 2003 and 2004 when she requested that Patterson permit her to flex her schedule or to work over to complete a specific task, but Patterson denied her requests unless the situation was an emergency. She also recalled an incident where she walked into a staff meeting and asked for a chair and Patterson made a comment about her needing a chair and also told her to "shut up" or words to that effect during the meeting [Doc. 20-2 at 24, 26].

[7] The Court will consider Plaintiff's allegation about the August 6, 2003, work assignment even though it falls outside of the 300-day period for the consideration of Plaintiff's Title VII discrimination claims because the continuing violation theory applies to hostile work environment claims under Title VII and, therefore, acts which are alleged to be component parts of the hostile work environment, but fall outside of the 300-day limitations period, may be considered if an act which is part of the hostile work environment claim falls within the 300-day limitations period. *Schmitt v. Solvay Pharmaceuticals, Inc.*, No. 06-11791, 2007 WL 3173323, * 5 (E.D. Mich. Oct. 29, 2007) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

were a pretext for discrimination. Similarly, Patterson's comments to Plaintiff during the staff meeting and his failure to respond to her inquiries concerning the December 19, 2003 memorandum and the reorganization of her unit may have been rude, but did not result in a workplace permeated with insult. As a matter of law, the single isolated and ambiguous comments by Patterson to Plaintiff at the staff meeting are insufficient to create a hostile or abusive working environment because nothing was done or said by Patterson which was sufficiently severe or pervasive enough to alter the conditions of Plaintiff's working environment by creating a hostile or abusive working environment. *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963, 1999)(quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

Accordingly, Defendant has satisfied its burden of showing there is no genuine issue of material fact and that as a matter of law it is entitled to a summary judgment on Plaintiff's Title VII hostile work environment claims.

### E.    Retaliation Issues

Defendant asserts Plaintiff cannot establish that any employment decisions by Defendant and/or Patterson were motivated by retaliation for any protected activity. [Doc. 16 at 12]. Defendant also asserts Patterson's actions were not materially adverse employment actions for the purpose of Plaintiff's Title VII retaliation claims [*id.* at 8-9].

### 1.    Legal Standard

In order to establish a *prima facie* case of retaliation, a plaintiff must establish: (1) she engaged in activity protected by Title VII; (2) the defendant knew or was aware of her exercise of her civil rights; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Balmer v. HCA, Inc.*, 423 F.3d 606, 613-14 (6th Cir. 2005); *Nguyen*, 229 F.3d at 562-63. To show a causal connection,

*i.e.*, to establish the fourth prong of a *prima facie* case of retaliation, a plaintiff must adduce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity. *Nguyen*, 229 F.3d at 563 (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997); *Jackson v. RKO Bottlers*, 743 F.2d 370, 377 (6th Cir. 1984)).

There is no one dispositive factor required to establish a causal connection; however, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.* (quoting *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987)). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met. *Id.* (quoting *Avery*, 104 F.3d at 861). A causal link may be shown through knowledge of protected activity combined with closeness in time or temporal proximity. *Tuttle v. Metro Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). Where the time period between the protected activity and the adverse employment action is less than two months, this is sufficient. *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006). However, "the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." *Balmer*, 423 F.3d at 615 (internal quotation omitted).

If the plaintiff establishes a *prima facie* case of retaliation, the defendant may rebut the presumption of retaliation from the *prima facie* case by asserting a legitimate, non-discriminatory reason for its actions. *Balmer*, 423 F.3d at 614. The plaintiff must then show by a preponderance of the evidence that the employer's proffered reason for its adverse employment action was pretextual. *Id.* The standard for showing pretext is the same as addressed above and will not be repeated herein.

## 2.    Application

As noted, Defendants asserts Patterson's actions in reorganizing Plaintiff's unit and the December 19, 2003 memorandum were not materially adverse employment actions for the purpose of Plaintiff's Title VII retaliation claims [Doc. 16 at 12]. In making this assertion, Defendant relies on the definition of a "materially adverse employment action" made in the Title VII discrimination context. However, as noted, in *Burlington Northern*, "the Supreme Court recently held that a plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context that in the anti-discrimination context." *Michael*, 496 F.3d at 595-96 (citing *Burlington Northern*, 548 U.S. at 68-69). "A materially adverse employment action in the retaliation context consists of any action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington Northern*, 548 U.S. 68-69). Thus, "actions not materially adverse for purposes of [a Title VII] anti-discrimination claim . . . qualify as such in the retaliation context." *Id. See Burlington Northern*, 548 U.S. at 69-70 (noting that under certain circumstances, a supervisor's failure to invite an employee to lunch could amount to a materially adverse retaliation action).

In her complaint, as well as the evidence before the Court, particularly, her response to Defendant's interrogatories, Plaintiff asserts that after receiving the March 14, 2003 notice of the reduction in force and her "demotion" from PPM2 to PPM1, she sent a memorandum to Defendant challenging her demotion on March 17, 2003 and received a reply on March 25, 2003. In her complaint, Plaintiff alleges two incidents of retaliation, which followed her "demotion" – Patterson's December 19, 2003 memorandum to Plaintiff directing her to spend two days per week in the field and the reorganization of her unit. The evidence does not establish a specific date for the reorganization of Plaintiff's unit, but based upon the limited evidence before the Court, the reorganization occurred in early 2004, after Patterson's December 19, 2003 memorandum. Plaintiff also alleges that on February

9, 2004, she filed a formal grievance with Defendant [Doc. 1 at 4, ¶ 23].  However, as Plaintiff alleged she sent a memorandum to Patterson on February 2, 2004, requesting he delay the reorganization of her unit [*id.* at 4, ¶¶ 21, 22], she has identified no specific act of retaliation which occurred after her "formal" grievance on February 9, 2004 either in her complaint or in her untimely response to Defendant's motion for summary judgement.[8]

In *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Court held that a Title VII plaintiff, raising claims of discrimination or retaliation must file her charge within the appropriate 180- or 300-day period, but a charge alleging a hostile work environment will not be barred if the acts constituting the hostile work environment claim are part of the same unlawful practices and at least one act is within the applicable 180- or 300- day filing period.  *Id.* at 105.  Thus, the Court has restricted the continuing violations doctrine to Title VII hostile work environment claims, but not to Title VII discrimination or retaliation claims on the ground that claims of discrimination or retaliation involve discrete acts which occur/accrue on the actual day they happen, but, by definition, a hostile work environment claim involves repeated conduct or incidents which occur over a period of days and perhaps years.  *Terry v. Memphis Housing Authority*, 422 F. Supp. 2d 917, 921-22 (W.D. Tenn. 2006) (citing *National R.R. Passenger Corp.*, 536 U.S. at 111-15).  A discrete discriminatory or retaliatory act is not actionable under Title VII if it occurred outside of the statutory period.  *Id.* (citing *National R.R. Passenger Corp.*, 536 U.S. at 113).

---

[8]  As noted, in her response to Defendant's interrogatories, but not as an allegation in her complaint, Plaintiff identified the August 6, 2003 work assignment to perform a manual file audit on another BPP employee and the denial of "comp" time to complete the task as another alleged act of retaliation by Patterson.  Not only is this incident not alleged in Plaintiff's complaint, but even if it were, any claim for retaliation based on this incident is barred by Plaintiff's failure to file a complaint with the EEOC within 300 days of the August 6, 2003 assignment.

As noted, in a deferral state – such as Tennessee – Plaintiff must file her EEOC complaint within 300 days of the alleged act of retaliation/discrimination, *Tartt*, 149 F. App'x at 460; and, as conceded by Plaintiff, because she filed her EEOC complaint on July 13, 2004 [Doc. 20-3 at 1], the 300-day bar prevents Plaintiff from claiming retaliation based upon events which occurred prior to September 17, 2003, which is 300 days prior to the date of her July 13, 2004 EEOC filing. Thus, although the August 6, 2003 assignment was considered for purposes of Plaintiff's claim of a hostile work environment, Plaintiff is barred from claiming retaliation, or discrimination, based upon the assignment.

In this instance, the first three elements of a *prima facie* case of retaliation are not in dispute here. Plaintiff asserts she filed a grievance concerning her "demotion" as the result of the statewide reduction in force and Patterson, who was promoted from her subordinate to her superior as the result of the reduction in force, took adverse employment action against her; namely, the December 19, 2003 memorandum directing her to spend to days per week in the field and the reorganization of her unit. This leaves the fourth element of a *prima facie* case of retaliation – showing a causal connection between the protected activity and the adverse employment action. "To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Michael*, 496 F.3d at 596 (quoting *Dixon v. Gonzalez*, 481 F.3d 324, 333 (6th Cir, 2007)). "Although temporal proximity itself is insufficient to find a causal connection, a temporal connection may be sufficient to support a finding of a causal connection." *Id.* (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006)).

Where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, such proximity is sufficient, standing alone to support an inference of a causal connection. *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004); *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir. 2000)). Thus,

in *Asmo*, the Sixth Circuit held that where the adverse employment action was within two months of the time the employer learned of the protected activity, such temporal proximity was sufficient to establish the requisite causal connection for a *prima facie* case of retaliation. *Id.* However, a nine-month period between the protected activity and adverse employment action is not enough to establish the requisite causal connection for a *prima facie* case of retaliation based upon temporal proximity alone. *Hamilton v. Starcom Mediavest Group, Inc.*, 522 F.3d 623, 630 (6th Cir. 2008). The causal connection element of a *prima facie* case has been found to be satisfied where the adverse employment action took place within three months of the protected activity. *Singfield v. Akron Metro. Housing Authority*, 389 F.3d 555, 563 (6th Cir. 2004). However, actions two-to-five months after the protected activity did not establish the causal connection based on temporal proximity alone. *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999). *See Parnell v. West*, No. 95-2131, 1997 WL 271751, * 3 (6th Cir. May 21, 1997) ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months.")

Patterson's December 19, 2003 memorandum was sent to Plaintiff more than eight months after she learned of the "demotion"/reduction in force as the result of the March 14, 2003 letter, sent her March 17, 2003 letter to Defendant challenging her demotion, and received Defendant's March 25, 2005 reply. Moreover, Patterson's December 19, 2003 memorandum was sent *prior* to Defendant's February 9, 2003 formal grievance. Although no exact date for the reorganization of Plaintiff's unit appears in the record, Plaintiff alleged in her complaint she sent a memorandum to Patterson requesting that the reorganization be delayed on February 4, 2004 [Doc. 1 at ¶¶ 21, 22]. Thus it appears the reorganization of Plaintiff's unit took place in early February 2004, more than nine months after the March 14, 2003 letter informing her of the "demotion"/reduction in force, her March 17, 2003 letter challenging the "demotion" and Defendant's March 25, 2003 response. Moreover, Plaintiff clearly knew about

Patterson's reorganization of her unit on February 4, 2004, when she alleges she sent a memorandum to him requesting the reorganization be delayed. Thus, Patterson's reorganization of Plaintiff's unit cannot be an act of retaliation for her filing of a formal grievance on February 9, 2004.

Even when viewed in the light most favorable to Plaintiff, Plaintiff cannot establish a *prima facie* case of retaliation based upon the mere temporal proximity of Patterson's alleged acts of retaliation standing alone. However, even assuming *arguendo* that Plaintiff could establish a *prima facie* case of retaliation, as noted above with respect to Plaintiff's Title VII discrimination claims, Defendant has produced evidence of a legitimate, non-discriminatory reason for its actions and Plaintiff did not timely respond with evidence creating a genuine issue of material fact that the legitimate reason offered by Defendant was a pretext for retaliation.

Accordingly, Defendant has satisfied its burden of showing there is no genuine issue of material fact and that as a matter of law it is entitled to a summary judgment on Plaintiff's Title VII retaliation claim.

## IV.     Conclusion

For the reasons stated above:

(1)     Defendant's motion for summary judgment [Doc. 15] is **GRANTED**; and

(2)     This action will be **DISMISSED WITH PREJUDICE**.

A separate judgment will enter.

SO ORDERED.

ENTER:

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

-34-